UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WARREN DRABEK D/B/A           :
EXPRESSPERMISSIONS,
                              :
                         Plaintiff,
                              :
        -against-                   16 Civ. 6786
                              :
ELSEVIER, INC.,
                              :
                        Defendant.
                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## COMPLAINT

Plaintiff Warren Drabek d/b/a ExpressPermissions ("Drabek"), by his undersigned attorneys, for his complaint against defendant Elsevier, Inc. ("Elsevier"), alleges:

### Nature of the Action

1.  Drabek is bringing this action to recover damages from Elsevier for breach of a written contract between Drabek and Elsevier. That contract concerned an effort to generate, and ultimately share, revenue from Elsevier's copyrights by (a) recovering unpaid license fees from current infringers, and (b) converting those current infringers into paying licensees.

### Jurisdiction and Venue

2.  This Court has subject matter jurisdiction over the claim in this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3.  Drabek is a citizen of the State of Nevada, residing at 1004 Bower Basin Street, Las Vegas, Nevada.

4. Upon information and belief, Elsevier is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 360 Park Avenue South, New York, New York.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Elsevier resides in this District and because a substantial part of the events and omissions giving rise to the claim occurred in this District.

## The Contract between the Parties

6. Drabek operates ExpressPermissions, a sole proprietorship that, among other things, acquires copyright licenses on behalf of its clients.

7. Elsevier publishes, among other things, scientific, technology and medical books and journals, most of which are protected by a copyright. Some of those copyrights are, from time to time, infringed.

8. In or before the Spring of 2012, Elsevier would identify potential infringements of copyrights which Elsevier could enforce (the "Copyrights"), send an invoice to the accused infringer for owed license fees, and endeavor to collect the invoice.

9. On or about May 1, 2012, Drabek contacted Luis Portero, Vice President of Commercial Sales at Elsevier. Drabek suggested that he and Elsevier work together to generate revenue from the Copyrights by recovering unpaid license fees from accused infringers and by converting those accused infringers into fee-paying licensees of the Copyrights, and securing Drabek both a commission on the unpaid fees recovered, and a fee from the new licensees for acquiring permissions on their behalf.

10. On or about June 1, 2012, Drabek and Elsevier entered into a written contract, a copy of which is annexed as Exhibit A (the "Contract"). The Contract contained an implied covenant of good faith and fair dealing.

11. The Contract required the parties to proceed in the following manner. Drabek would be given access to ScienceDirect, a database of Elsevier's scientific copyrighted works, and would search for and locate evidence of those works being potentially infringed. Upon determining that Elsevier's Copyright was potentially infringed, Drabek would provide to Elsevier evidence of specific potential infringements. Elsevier would then send a letter and an invoice to the accused infringer, and collect the invoice.

12. In June and July of 2012, Drabek and Elsevier fleshed out a more specific and detailed course of conduct. Upon learning of a potential infringement, Drabek would document proof of the potential infringement, evaluate the cost of the appropriate license, draft a cover letter and invoice for Elsevier to send to the potential infringer, and transmit proof of the potential infringement, the draft letter and the invoice to Elsevier. Elsevier would then send the letter and invoice to the accused infringer, and collect the invoice.

13. For his efforts in helping Elsevier recover licensing revenue from its Copyrights, the Contract required Elsevier to compensate Drabek in the following ways. First, the Contract required Elsevier to pay Drabek a monthly retainer of $1,000 for the duration of the Contract. Second, the Contract required Elsevier to pay Drabek 15% of the amount for which Elsevier invoiced the accused infringer. Third, the Contract required Elsevier to inform Drabek of any suspected infringer of Elsevier's Copyrights, which would help Drabek document more potential infringements, and earn more revenue for Elsevier and himself. Fourth, the Contract required Elsevier to notify the accused infringers that Drabek was the preferred vendor for acquiring

3

licenses from Elsevier, and could provide the licenses at discounted rates, which would help Drabek grow his client base, and help Elsevier streamline its collection of future license fees from accused infringers-turned-licensees.

14. The term of the Contract was from June 1, 2012, to December 31, 2012.

Drabek's Performance of the Contract

15. In accordance with its obligations under the Contract, Drabek searched for potential infringements of Elsevier's Copyrights.

16. On July 19, 2012, Drabek notified Elsevier of three entities that had potentially infringed Elsevier's Copyrights: the American Society of Hematology ("ASH"); the American Chemical Society ("ACS"); and the American Association for Cancer Research ("AACR").

17. For ASH, Drabek provided Elsevier with proof of the specific potential infringements, a draft letter for Elsevier to send to ASH, and a draft of an itemized invoice, which stated that ASH owed Elsevier $12,800 in unpaid license fees.

18. On August 27, 2012, an employee of Elsevier, Derrick Imasa ("Imasa"), sent ASH a letter and an invoice for $12,800 in unpaid license fees.

19. For ACS, Drabek provided Elsevier with proof of the specific potential infringements, a draft letter for Elsevier to send to ACS, and a draft of an itemized invoice, which stated that ACS owed Elsevier $14,400 in unpaid license fees.

20. On August 27, 2012, Imasa sent ACS a letter and an invoice for $14,400 in unpaid license fees.

21. For AACR, Drabek provided Elsevier with proof of the specific potential infringements, a draft letter for Elsevier to send to AACR, and a draft of an itemized invoice, which stated that AACR owed Elsevier $21,600 in unpaid license fees.

22. On August 27, 2012, Imasa sent AACR a letter and an invoice for $21,600 in unpaid license fees.

23. Between September 21, 2012 and December 28, 2012, Drabek sent Elsevier drafts of letters and invoices for 22 other similar instances of potential infringement, along with proof of each potential infringement. These drafts of letters and invoices concerned 379 potential infringements and sought $322,610 in unpaid license fees, which are summarized below.

| Organization | Number of Potential Elsevier Infringements | Unpaid Permissions Fees |
| --- | --- | --- |
| American Academy of Neurology | 10 | $8,000.00 |
| American Association for the Advancement of Science | 15 | $12,000.00 |
| American College of Cardiology | 13 | $10,400.00 |
| American College of Osteopathic Internists | 16 | $12,800.00 |
| American Congenital Heart Association | 5 | $4,000.00 |
| American Diabetes Association | 30 | $24,000.00 |
| American Osteopathic Academy of Addiction Medicine | 13 | $10,400.00 |
| American Osteopathic College of Physical Medicine & Rehabilitation | 6 | $4,800.00 |
| American Radium Society | 32 | $25,600.00 |
| American Society of Clinical Oncology | 19 | $20,900.00 |
| American Society of Cytopathology | 22 | $17,600.00 |
| American Society of Health-System Pharmacists | 3 | $2,400.00 |
| Coca-Cola Company Beverage Institute for Health and Wellness | 17 | $20,400.00 |
| Endocrine Society | 18 | $14,400.00 |
| European Society for Clinical Nutrition and Metabolism | 40 | $32,000.00 |
| GlaxoSmithKline plc | 7 | $5,600.00 |
| International Life Sciences Institute | 17 | $13,600.00 |
| Massachusetts Medical Society | 25 | $20,000.00 |
| Nestle Nutrition Institute | 25 | $26,910.00 |
| Society for Investigative Dermatology | 9 | $7,200.00 |
| Society for Nuclear Medicine | 15 | $12,000.00 |
| United States and Canadian Academy of Pathology | 22 | $17,600.00 |
| | 379 | $322,610.00 |

24. For each of the above instances in which Drabek prepared an invoice and transmitted it to Elsevier pursuant to the Contract, upon information and belief, the Organization had potentially infringed at least the works that Drabek identified.

### Elsevier's Breach of the Contract

25. The Contract required Elsevier to pay Drabek a monthly retainer of $1,000 for the duration of the Contract. Elsevier paid the monthly retainer only for the first four months of the Contract. Elsevier failed to pay the monthly retainer for the last three months of the Contract, October, November and December 2012.

26. Upon information and belief, Elsevier failed to make reasonable efforts to collect the invoices Elsevier sent to ASH, ACS, and AACR.

27. Upon information and belief, Elsevier never sent any letters and/or invoices to the other 22 potential infringers that Drabek identified under the Contract. Upon information and belief, Elsevier failed to make reasonable efforts to send these letters and/or invoices.

28. Elsevier did not notify Drabek of any persons it suspected of infringing its Copyrights, except Elsevier notified Drabek of one, and only one, suspected infringer. Upon information and belief, Elsevier identified numerous suspected infringers of its copyrights during the seven-month duration of the Contract.

29. Elsevier did not notify Drabek of its intent to ignore its obligations under the Contract, while allowing Drabek to continue to perform his obligations under it.

### A CAUSE OF ACTION
(Breach of Contract)

30. Drabek repeats the allegations in paragraphs 1 through 29 above as if set forth in full.

31. The Contract is an enforceable agreement between Drabek and Elsevier.

32. Drabek performed all of his obligations under the Contract.

33. Elsevier breached the Contract by failing to pay Drabek his monthly retainer of $1,000 for October, November, and December 2012. As a result of this breach of Contract, Drabek has suffered $3,000 in damages.

34. Elsevier breached the Contract by refusing to pay Drabek the 15% of the amounts billed to ASH, ACS, and AACR for unpaid license fees. As a result of this breach of Contract, Drabek has suffered $7,320 in damages.

35. Elsevier breached the Contract by refusing to pay Drabek the 15% of the amounts that Elsevier should have billed in unpaid license fees from the 22 other potential infringers Drabek identified between September 21, 2012 and December 28, 2012.  As a result of this breach of Contract, Drabek has suffered damages of (a) $48,391 and, (b) upon information and belief, additional amounts resulting from the lost opportunity to convert these potential infringers into new licensing clients of Drabek, the precise amount to be determined by the trier of fact in this action, but which upon information and belief, exceeds $20,000.

36. Elsevier breached the Contract by failing to notify Drabek of additional suspected infringers of the Copyrights during the term of the Contract.  As a result of this breach of Contract, Drabek suffered damages representing the lost opportunity to convert suspected infringers into licensing clients, the precise amount to be determine by the trier of fact in this action, but which upon information and belief, exceeds $20,000.

37. As a result of Elsevier's breach of Contract, Drabek has suffered damages in excess of $75,000 exclusive of interest and costs, the precise amount to be determined by the trier of fact in this action.

WHEREFORE, Drabek demands judgment:

  A.  Awarding Drabek damages for an amount in excess of $75,000 exclusive of interest and costs, the precise amount to be determined by the trier of fact in this action;

  B.  Awarding Drabek his costs in this action; and

  C.  Granting such other and further relief as to this Court seems just and proper.

<u>Jury Trial Demand</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Drabek hereby demands a trial by jury of all issues in this action that are so triable.

Dated: New York, New York
    August 29, 2016

            DUNNEGAN & SCILEPPI LLC

            By_____
             Laura Scileppi (LS0114)
             ls@dunnegan.com
             Richard Weiss (RW4039)
             rw@dunnegan.com
            Attorneys for Plaintiff
            350 Fifth Avenue
            New York, New York 10118
            (212) 332-8300