```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
WARREN DRABEK D/B/A                      :    16cv6786(DLC)
EXPRESSPERMISSIONS,                      :
                                         :    OPINION AND ORDER
                 Plaintiff,              :
                                         :
            -v-                          :
                                         :
ELSEVIER, INC.,                          :
                                         :
                 Defendant.              :
                                         :
---------------------------------------- X
```

APPEARANCES:

For the plaintiff:

Laura Scileppi
Richard Weiss
Dunnegan & Scileppi LLC
350 Fifth Avenue
New York, NY 10118

For the defendants:

Kerry M. Mustico
Oppenheim + Zebrak, LLP
5225 Wisconsin Ave. NW, Suite 503
Washington, DC 20015

DENISE COTE, District Judge:

    Warren Drabek d/b/a Express Permissions ("Drabek") brings this breach of contract action against Elsevier, Inc. ("Elsevier") for an alleged breach of contract.  Elsevier moves to dismiss the amended complaint.  For the following reasons, the motion is granted pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P.

## Background

These facts are taken from the amended complaint and documents integral to the complaint.  Drabek and Elsevier entered into a seven-month independent contractor's agreement (the "Contract") commencing on June 1, 2012 and ending on December 31, 2012.  The Contract was terminable by Elsevier "without cause at any time upon two weeks prior written notice."  Elsevier did not terminate the Contract prior to its expiration on December 31.

Elsevier is a publishing company and the Contract provided that Drabek would "investigate and identify potential copyright violations of [Elsevier's] owned content" by "supply[ing] [Elsevier] concrete examples of direct lifts, adaptations, or content where one can clearly identify the material to the original version owned by [Elsevier]."  In exchange, Elsevier agreed to pay a "monthly retainer in the amount of $1,000.00 for the services performed under this agreement."

The Contract also provided that

> [Elsevier] will supply to any company/organization that has been found to be in violation of copyright law a bill for the use of [Elsevier's] content that was used without formal permission.  A copy of the letter and bill will be shared with [Drabek]. [Drabek] will receive 15% of the entire amount billed from the breach of copyright law regarding permissions.  [Drabek] will be paid 60 days after recovery.

Further, Elsevier agreed to "include in their letter to the violating company/organization that should the company/organization be interested in using [Elsevier's] content in the future, [Elsevier's] preferred vendor for clearing permissions is ExpressPermissions."  Further, the Contract obligated Elsevier to inform Drabek "[s]hould [Elsevier] have any suspicion of companies/organizations that are in violation of copyright law."

On July 19, 2012, Drabek notified Elsevier of three entities that had potentially infringed Elsevier's Copyrights -- the American Society of Hematology ("ASH"), the American Chemical Society ("ACS"), and the American Association for Cancer Research ("AACR") -- and provided draft letters and bills for Elsevier to send to the entities.  On August 27, Elsevier sent bills totaling $48,000 to the three entities for unpaid license fees.  Elsevier did not ultimately collect any money as a result of the letters sent to ASH, ACS, and AACR.  Drabek alleges that "Elsevier prohibited Drabek from approaching ASH, ACS, and AACR to convert them into licensees."

Between September 21 and December 28, 2012, Drabek sent Elsevier draft letters and bills for an additional 22 entities with potential infringements amounting to $322,610 in unpaid fees.  Elsevier did not send letters or bills to any of the 22 entities.  Drabek alleges that "Elsevier prohibited Drabek from

3

approaching at least some of the other 22 potential infringers in order to convert them into licensees."

Elsevier informed Drabek of one suspected infringer during the term of the Contract. The amended complaint alleges that "[u]pon information and belief, Elsevier identified at least dozens, if not hundreds, of suspected infringers of its copyrights during the seven-month duration of the Contract."

Drabek alleges the following breaches of contract and corresponding damages: (1) Elsevier failed to "pay Drabek his monthly retainer of $1,000 for October, November, and December 2012," resulting in damages of $3,000; (2) Elsevier refused to pay Drabek 15% of the amounts billed from ASH, ACS, and AACR, resulting in damages of $7,320; (3) Elsevier refused to "pay Drabek 15% of the amounts that Elsevier should have billed in unpaid license fees from the 22 potential infringers Drabek identified," resulting in damages of $48,391 -- 15% of the estimated amount that should have been billed -- and a least an additional $20,000 for Drabek's "lost enhanced opportunity to convert these potential infringers into new licensing clients of Drabek"; (4) Elsevier failed "to notify Drabek of additional suspected infringers of the Copyrights" resulting in damages of at least $20,000 -- 15% of the estimated amount that should have been billed -- and at least an additional $20,000 based on his

approaching at least some of the other 22 potential infringers in order to convert them into licensees."

Elsevier informed Drabek of one suspected infringer during the term of the Contract. The amended complaint alleges that "[u]pon information and belief, Elsevier identified at least dozens, if not hundreds, of suspected infringers of its copyrights during the seven-month duration of the Contract."

Drabek alleges the following breaches of contract and corresponding damages: (1) Elsevier failed to "pay Drabek his monthly retainer of $1,000 for October, November, and December 2012," resulting in damages of $3,000; (2) Elsevier refused to pay Drabek 15% of the amounts billed from ASH, ACS, and AACR, resulting in damages of $7,320; (3) Elsevier refused to "pay Drabek 15% of the amounts that Elsevier should have billed in unpaid license fees from the 22 potential infringers Drabek identified," resulting in damages of $48,391 -- 15% of the estimated amount that should have been billed -- and a least an additional $20,000 for Drabek's "lost enhanced opportunity to convert these potential infringers into new licensing clients of Drabek"; (4) Elsevier failed "to notify Drabek of additional suspected infringers of the Copyrights" resulting in damages of at least $20,000 -- 15% of the estimated amount that should have been billed -- and at least an additional $20,000 based on his

"lost enhanced opportunity to convert suspected infringers into licensing clients."

The complaint in this action was originally filed on August 29, 2016, more than three years after the Contract's expiration in 2012.  On October 26, Elsevier filed a motion to dismiss.  By Order of October 27, Drabek was given an opportunity to file either an opposition to the motion to dismiss or an amended complaint.  The Order advised Drabek that it was unlikely that he would have a further opportunity to amend.  On November 16, Drabek filed an amended complaint.[1]  Drabek filed a renewed motion to dismiss for lack of subject matter jurisdiction and failure to state a claim on November 30, which became fully submitted on January 13, 2017.

## Discussion

### I.   12(b)(6) Motion to Dismiss

When deciding a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., a court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor."  LaFaro v. New York Cardiothoracic Grp., PLLC,

---

[1] The amended complaint added information regarding Drabek's experience identifying copyright infringers and knowledge of licensing rates.  It also added an alternative ground for the third breach of Contract, that Elsevier "changed its mind about the types of uses of its copyrighted works that Elsevier believed were infringements" and failed to inform Drabek of this change.

570 F.3d 471, 475 (2d Cir. 2009). The court is "not bound to accept as true legal conclusions couched as factual allegations." Id. at 475-756. The court may consider the facts alleged in the complaint as well as "any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference." Stratte-McClure v. Morgan Stanley, 776 F.3d 94, 100 (2d Cir. 2015) (citation omitted).

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts which, taken as true, state a plausible claim for relief." Keiler v. Harlequin Enters. Ltd., 751 F.3d 64, 68 (2d Cir. 2014); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208 (2d Cir. 2014) (citation omitted).

The Contract's choice of law clause selected New York as its governing law. "To state a claim for breach of contract under New York law, the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the

6

plaintiff; (iii) failure of defendant to perform; and (iv) damages." Orlander v. Staples, Inc., 802 F.3d 289, 294 (2d Cir. 2015) (citation omitted). Under New York law, "agreements are to be construed in accordance with the parties' intent," the "best evidence" of which "is what they say in their writing." In re World Trade Ctr. Disaster Site Litig., 754 F.3d 114, 122 (2d Cir. 2014) (citation omitted). "Accordingly, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." Id. (citation omitted).

"At the outset, the court must determine whether the language the parties have chosen is ambiguous." Gary Friedrich Enterprises, LLC v. Marvel Characters, Inc., 716 F.3d 302, 313 (2d Cir. 2013). "A contract is unambiguous when the contractual language has a definite and precise meaning about which there is no reasonable basis for a difference of opinion." Keiler v. Harlequin Enterprises Ltd., 751 F.3d 64, 69 (2d Cir. 2014). "By contrast, ambiguity exists where a contract's term could objectively suggest more than one meaning to one familiar with the customs and terminology of the particular trade or business." Id. "Whether a contract is ambiguous is a question of law." Id. But ambiguity does not arise merely by virtue of the fact that the parties volunteer different definitions. Law Debenture Trust Co. of New York v. Maverick Tube Corp., 595 F.3d

458, 467 (2d Cir. 2010). "Thus, the court should not find the contract ambiguous where the interpretation urged by one party would strain the contract language beyond its reasonable and ordinary meaning. Id. (citation omitted). "[W]ords and phrases in a contract should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." Olin Corp. v. Am. Home Assur. Co., 704 F.3d 89, 99 (2d Cir. 2012) (citation omitted).

### A. Failure To Pay $3,000 In Monthly Retainer Fees

The Contract provided that Elsevier would pay a "monthly retainer in the amount of $1,000.00 for the services performed under this agreement." Drabek asserts, and Elsevier does not dispute, that Elsevier failed to pay him $3,000 in retainer fees for the last three months of the Contract's term.

Elsevier argues that this claim is moot because it sent Drabek's counsel an Offer of Judgment pursuant to Rule 68, Fed. R. Civ. P., for $3,400 as the "total amount to be paid by Defendant on account of any liability and damages." The Offer of Judgment conditioned payment on Drabek's release of all claims against Elsevier. Drabek did not accept the offer.

Under Rule 68, "an unaccepted offer is considered withdrawn." "[A]n unaccepted settlement offer has no force. Like other unaccepted contract offers, it creates no lasting right or obligation. With the offer off the table, and the

8

defendant's continuing denial of liability, adversity between the parties persists." Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663, 666 (2016).  Since the settlement offer was not accepted, this claim is not moot.

### B. Refusal To Pay 15% Of Amounts Billed But Not Recovered

Drabek alleges that Elsevier was obligated and failed to pay him 15% of the amounts billed to but not recovered from ASH, ACS, and AACR.  Elsevier moves to dismiss this claim on the basis that Drabek was entitled to a payment only if Elsevier recovered money.  Elsevier is correct.

The two sentences of the Contract addressing this matter are unambiguous when read together: Drabek is owed 15% of the amount billed sixty days "after recovery."  It is undisputed that Elsevier never recovered any monies from the three billed entities.

Drabek makes two arguments as to why he is entitled to 15% of the amount billed whether or not Elsevier recovered any payment.  Drabek first argues that Elsevier was obligated to pay 15% once it sent the letters and bills, because the Contract states in one sentence that Drabek "will receive 15% of the entire amount billed."  He argues that the next sentence, that he "will be paid 60 days after recovery" merely provides a deadline for Elsevier to pay <u>if</u> it receives a payment from the accused infringer, and that while the Contract does not provide

9

a deadline if there is no recovery, a reasonable time should be implied by law.  This interpretation renders the 60-day time period partly superfluous -- because the obligation to pay inheres at the time of billing under this interpretation -- and creates a missing term that must then be supplied -- when Drabek should be paid if there is no recovery.  Since this proposed interpretation fails to give full meaning and effect to all of the Contract's provisions, it is rejected.

Drabek next argues that if Elsevier's obligation to pay did not arise from sending the bills, then Elsevier breached the Contract by failing to make reasonable efforts to collect the amounts billed.  The Contract, however, did not obligate Elsevier to take any particular action to collect on bills it sent.

### C. Failure To Bill Identified Potential Infringers

Drabek alleges that Elsevier was obligated and failed to pay him 15% of the amounts that "should have been billed" to 22 other entities Drabek identified to Elsevier as potential infringers during the term of the Contract.  But the Contract imposed no obligation on Elsevier to pay Drabek at the time of identification.  Under the Contract, Elsevier had the opportunity to assess and decide whether to pursue infringement claims against potential infringers identified by Drabek.

10

Drabek argues that Elsevier breached an implied covenant of good faith and fair dealing by failing to make a good faith determination as to whether the potential infringements identified by Drabek were actionable infringements.  Under New York law, a covenant of good faith and fair dealing is implicit in all contracts during the course of the contract.  Sec. Plans, Inc. v. CUNA Mut. Ins. Soc., 769 F.3d 807, 817 (2d Cir. 2014).  It "applies where an implied promise is so interwoven into the contract as to be necessary for effectuation of the purposes of the contract.  For this to occur, a party's action must directly violate an obligation that may be presumed to have been intended by the parties."  Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 407-08 (2d Cir. 2007) (citation omitted).  But, "the implied covenant of good faith and fair dealing cannot be used to impose an obligation that is inconsistent with express contractual terms."  In Touch Concepts, Inc. v. Cellco P'ship, 788 F.3d 98, 102 (2d Cir. 2015) (citing Murphy v. Am. Home Prods. Corp., 58 N.Y.2d 293, 304 (1983)).  "[T]he implied covenant does not extend so far as to undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract."  Thyroff, 460 F.3d at 408 (citation omitted).

Drabek argues that Elsevier breached the duty of good faith and fair dealing by failing to make a good faith determination

11

of whether the potential infringements he identified to it were actually infringing and by failing to send the corresponding letter and bill for any it determined warranted such an action. He argues that this obligation must have been breached because no bills were sent to the 22 entities he identified, and their uses of Elsevier's content were similar to uses for which Elsevier sent ASH, ACS, and AACR letters and bills, and for which Elsevier has demanded license fees from Drabek's clients in the past.

Drabek has not pleaded a cognizable claim for damages. The Contract does not entitle him to be paid for monies Elsevier "should have" billed, but did not. What Drabek seeks are consequential damages, which "seek to compensate a plaintiff for additional losses (other than the value of the promised performance) that are incurred as a result of the defendant's breach." Schonfeld v. Hilliard, 218 F.3d 164, 176 (2d Cir. 2000). A party claiming consequential damages must plausibly plead the existence and amount of damages with "reasonably certainty," and that the damages were foreseeable and within the contemplation of both parties. See Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc., 487 F.3d 89, 111 (2d Cir. 2007) (summary judgment decision). "[A] party seeking consequential damages must identify specific contractual provisions demonstrating that recovery of such damages was contemplated by

the parties." Globecon Group, LLC v. Hartford Fire Ins. Co., 434 F.3d 165, 176 (2d Cir. 2006) (summary judgment decision).

As discussed above, Elsevier was not obligated by the Contract either to bill any entity or to do anything to collect on the bills it did send. The Contract also states that "[i]n no event will [Drabek] be entitled to receive more than the total amount of compensation provided for herein."

Drabek also argues that he is entitled to at least $20,000 from the "lost enhanced opportunity to convert these potential infringers into new licensing clients of Drabek." "Lost profits are consequential damages when, as a result of the breach, the non-breaching party suffers loss of profits on collateral business arrangements." Tractebel Energy Mktg., Inc., 487 F.3d at 109.

> [L]ost profit damages may be awarded only if (1) a plaintiff demonstrates with reasonable certainty that such damages have been caused by the breach; (2) the alleged loss was capable of proof with reasonable certainty; and (3) lost profit damages were fairly within the contemplation of the parties at the time of contracting.

Westerbeke Corp. v. Daihatsu Motor Co., 304 F.3d 200, 209-10 (2d Cir. 2002) (quoting Kenford Co. v. County of Erie, 67 N.Y.2d 257, 261 (1986) (per curiam)).

Again, there was no breach of a duty here. The Contract does not guarantee to Drabek the right to convert potential infringers into his clients. Nor does it obligate Elsevier to

13

take any action to help Drabek gain clients, other than noting that he would be identified as their "preferred vendor" if it sent a letter and bill.  Further, the lost profit damages Drabek requests fail as a matter of law.  The alleged lost profits are not capable of proof with reasonable certainty or fairly implied by the Contract.

### D. Failure To Notify Drabek Of Additional Infringers

Drabek alleges that Elsevier was obligated by the Contract to notify Drabek about dozens, if not hundreds of additional suspected infringers, and failed to do so.  Drabek alleges that the alleged failure caused him damages in the amount of 15% of what Elsevier might have billed to these potential infringers, and at least an additional $20,000 for "lost enhanced opportunity to convert suspected infringers into licensing clients."

While the Contract did obligate Elsevier to inform Drabek of "any suspicion" that entities were in violation of the copyright law, it also warned that "[i]n no event will [Drabek] be entitled to receive more than the total amount of compensation provided for herein."  Read together, any failure by Elsevier to advise Drabek of its suspicions cannot support a claim for damages.  If Elsevier had identified a suspected infringer to Drabek, and Drabek ultimately recommended a letter and bill be sent, it is still uncertain whether Elsevier would

14

decide to send a letter and bill, and whether it would recover any monies from the entity. As described above, Drabek's right to a 15% fee is triggered by recovery. This chain of events is too lengthy and speculative to support a claim for damages.

## II. Subject Matter Jurisdiction

Drabek asserts diversity jurisdiction in this matter pursuant to 28 U.S.C. § 1332, and Elsevier moves to dismiss pursuant to 12(b)(1), Fed. R. Civ. P., on the basis that the amount in controversy does not exceed $75,000 to a legal certainty. "[A] claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted). In reviewing a motion to dismiss under Rule 12(b)(1) the court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs." J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted).

"Diversity jurisdiction exists over civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." Hallingby v. Hallingby, 574 F.3d 51, 56 (2d Cir. 2009) (citation omitted); see 28 U.S.C. § 1332(a). The

party invoking the federal court's jurisdiction bears the burden of showing a "reasonable probability" that the threshold amount in controversy for diversity jurisdiction is satisfied. Colavito v. N.Y. Organ Donor Network, Inc., 438 F.3d 214, 221 (2d Cir. 2006) (citation omitted).  "This burden is hardly onerous, however, for we recognize a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy."  Scherer v. Equitable Life Assur. Soc'y of the U.S., 347 F.3d 394, 397 (2d Cir. 2003) (citation omitted).

"To overcome the face-of-the-complaint presumption, the party opposing jurisdiction must show to a legal certainty that the amount recoverable does not meet the jurisdictional threshold."  Id. (citation omitted).  In making this determination, "the legal impossibility of recovery must be so certain as virtually to negate the plaintiff's good faith in asserting the claim."  Chase Manhattan Bank v. American Nat'l Bank and Trust Co., 93 F.3d 1064, 1070 (2d Cir. 1996).  "If the right of recovery is uncertain, the doubt should be resolved in favor of the subjective good faith of the plaintiff."  Id. (citation omitted).

The face of the amended complaint alleges damages in excess of $75,000, but Elsevier has successfully rebutted the presumption that this is a good faith representation of the

16

actual amount in controversy.  As discussed above through the Rule 12(b)(6) framework, based on the unambiguous language of the Contract, all but $3,000 of Drabek's damages fail as a matter of law.  Drabek cannot meet the threshold amount required for diversity jurisdiction to a legal certainty.  This is not merely because he did not allege facts sufficient to warrant damages, but because the damages he seeks are not recoverable under the Contract.

### III. Request to Amend the Complaint

Drabek requests that, in the event that the motion to dismiss is granted, he be afforded a second opportunity to amend his complaint.  "When a party requests leave to amend its complaint, permission generally should be freely granted." Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013) (citation omitted); Fed R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").  "Leave to amend may properly be denied if the amendment would be futile," however.  Krys v. Pigott, 749 F.3d 117, 134 (2d Cir. 2014).  "A proposed amendment to a complaint is futile when it could not withstand a motion to dismiss." Balintulo v. Ford Motor Co., 796 F.3d 160, 164-65 (2d Cir. 2015) (citation omitted).

Drabek's request to amend his complaint a second time is denied.  He has not proposed any specific amendments to the

17

first amended complaint that would cure the defects identified in this Opinion. See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC, 797 F.3d 160, 190 (2d Cir. 2015) (noting that leave to amend has been properly denied "where the request gives no clue as to how the complaint's defects would be cured" (citation omitted)). Drabek has already amended his complaint once in response to sElsevier's initial motion to dismiss, and the amended complaint contained substantially the same theories.

## Conclusion

Elsevier's November 30, 2016 motion to dismiss all but one of Drabek's claims is granted pursuant to Rule 12(b)(6). The action is dismissed in its entirety under Rule 12(b)(1). The Clerk of Court shall enter judgment for the defendant and close the case.

Dated:   New York, New York
         February 13, 2017

                               _____
                                       DENISE COTE
                               United States District Judge